IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
Civil Action No.: 5:22-CV-12

| | |
|---|---|
| ALEJANDRO J. SULETA and ADRIANNE CARROLL, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITIBANK, N.A. AND JOHN DOES 1-10,<br><br>Defendants. | **CLASS ACTION COMPLAINT** |

**NOW COMES**, ALEJANDRO J. SULETA (individually "Alejandro") and ADRIANNE CARROLL (individual, "Adrianne") (collectively "Plaintiffs"), individually, and on behalf of all others similarly situated, through their undersigned counsel, complaining of CITIBANK, N.A. as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this action seeking damages as well as injunctive relief for Defendant's violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.

2. "The primary purpose of the TCPA was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls." *Parchman v. SLM Corp.,* 896 F.3d 728, 738-39 (6th Cir. 2018) *citing* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394 (1991).

1

3. "As the Supreme Court recently observed, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

5. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) as a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## PARTIES

6. Alejandro is a natural person, over 18-years-of-age, who at all times relevant resided in Lenoir, North Carolina.

7. Adrianne is a natural person, over 18-years-of-age, who at all times relevant resided in Newton, North Carolina.

8. Plaintiffs are each a "person" as defined by 47 U.S.C. § 153(39).

9. CITIBANK, N.A. ("Defendant") is a prominent banking institution that provides banking and financial services to consumers nationwide.

10. Defendant maintains its principal place of business in New York, New York.

11. Defendant is a "person" as defined by 47 U.S.C. § 153(39).

12. Defendant conducts business in the State of North Carolina and is registered with the North Carolina Secretary of State.

13. JOHN DOES 1-10 are third party vendors/agents that Defendant engages to collect alleged debts owed by Defendant's customers. The identities of JOHN DOES 1-10 are unknown to Plaintiffs at this time and will be ascertained through discovery.

2

Case 5:22-cv-00012-KDB-DSC   Document 1   Filed 02/03/22   Page 2 of 11

## FACTUAL ALLEGATIONS

14. At all times relevant, Alejandro was the sole operator, possessor, and subscriber of the cellular telephone number ending in 4921.

15. At all times relevant, Alejandro's number ending in 4921 was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

16. At all times relevant, Adrianne was the sole operator, possessor, and subscriber of the cellular telephone number ending in 5627.

17. At all times relevant, Adrianne's number ending in 5627 was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

18. At all times relevant, Plaintiffs were financially responsible for their cellular phone services.

19. Adrianne is Alejandro's fiancé.

20. Alejandro and his father, Alejandro Suleta, share the same name.

21. Upon information and belief, Alejandro's father has a Best Buy credit card account issued by Defendant.

22. Alejandro and Adrianne are not co-obligors on Alejandro's father's account nor are they authorized users.

### Phone Calls to Adrianne's Cellular Phone

23. Adrianne does not have an account or any other form of business relationship with Defendant.

24. Adrianne has never provided her cellular phone number to Defendant.

25. Starting in January 2021, Adrianne began receiving telephone calls from Defendant, including calls from the phone number (877) 488-3647.

26. When the calls began, Adrianne did not answer as she did not recognize the number Defendant was calling from.

27. In the calls that Adrianne did not answer, Defendant would leave a prerecorded voice message ("robocall") stating:

> "Thank you for being a part of the Citibank family. We know you are busy but if you could take a few minutes to log in at www.bestbuy.accountonline.com to review your Best Buy account status it would be appreciated. If you would prefer to call us please feel free to as it is always great to get a chance to speak with our valued client. Our toll free number is (888) 720-5859. Once again, thanks for being a valued Citibank customer."

28. In January 2021, frustrated with the robocalls, Adrianne answered a call from Defendant and spoke to a live representative.

29. During this call, Adrianne (1) advised Defendant that she does not have an account with Defendant, (2) notified Defendant that it was calling the wrong number, and (3) requested that Defendant cease its misguided robocalls.

30. Despite Adrianne's request that the calls cease, Defendant continued to pound Adrianne with daily robocalls.

31. On average, Defendant placed at least two robocalls to Adrianne's cellular phone per day, including calls on the weekend.

32. In total, Defendant has placed no less than six-hundred (600) robocalls to Adrianne's cellular phone without her consent from January 2021 through the present.

**Phone Calls to Alejandro's Cellular Phone**

33. Alejandro does not have an account or any other form of business relationship with Defendant.

34. Alejandro has never provided his cellular phone number to Defendant.

4

35. Starting in February 2021, Alejandro began receiving telephone calls from Defendant, including calls from the phone number (877) 488-3647.

36. When the calls began, Alejandro did not answer as he did not recognize the number Defendant was calling from.

37. In the calls that Alejandro did not answer, Defendant would leave a prerecorded voice message stating:

> "Thank you for being a part of the Citibank family. We know you are busy but if you could take a few minutes to log in at www.bestbuy.accountonline.com to review your Best Buy account status it would be appreciated. If you would prefer to call us please feel free to as it is always great to get a chance to speak with our valued client. Our toll free number is (888) 720-5859. Once again, thanks for being a valued Citibank customer."

38. In February 2021, frustrated with the robocalls and battling a COVID-19 infection, Alejandro answered a call from Defendant and spoke to a live representative.

39. During this call, Alejandro (1) advised Defendant that he is not his father; (2) advised Defendant that it is calling the wrong number; (3) provided Defendant with his father's phone number; and (4) requested that Defendant cease its misguided robocalls.

40. Despite Alejandro's request that the calls cease, Defendant continued to pound Alejandro with daily robocalls.

41. In August 2021, Alejandro again answered one of Defendant's calls.

42. During this call, Alejandro (1) again advised Defendant that he is not his father; (2) again advised Defendant that it is calling the wrong number; (3) again provided Defendant with his father's phone number; and (4) again requested that Defendant cease its misguided robocalls.

43. Alejandro's pleas fell on deaf ears again and Defendant continued placing incessant robocalls to Alejandro's cellular phone.

44. On average, Defendant placed at least two robocalls to Alejandro's cellular phone per day, including calls on the weekend.

45. In total, Defendant has placed no less than seven-hundred (700) robocalls to Alejandro's cellular phone without his consent from February 2021 through the present.

46. All the calls placed by Defendant to Plaintiffs were made in an attempt to collect a debt allegedly owed by Alejandro's father.

47. Upon information and belief, Defendant's phone calls were part of Defendant's nefarious scheme to collect delinquent accounts. Specifically, Defendant's scheme consists of the strategic placement of phone calls to delinquent consumers' relatives and acquaintances in an effort to pressure the delinquent consumers to make payment on their accounts to avoid the embarrassment and humiliation of being perceived as "deadbeats" by their relatives and acquaintances.

**DAMAGES**

48. Plaintiffs value their time, privacy, and solitude.

49. Defendant's misguided robocalls have invaded Plaintiffs' privacy and have caused Plaintiffs actual harm, including, aggravation that accompanies unwanted robocalls, increased risk of personal injury resulting from the distraction caused by the robocalls, wear and tear to Plaintiffs' cellular phones, intrusion upon and occupation of Plaintiffs' cellular phones, temporary loss of use of Plaintiffs' cellular phones, loss of battery charge, loss of concentration, mental anguish, nuisance, the per-kilowatt electricity costs required to recharge Plaintiffs' cellular phones as a result of increased usage of Plaintiffs' telephone services, and wasting Plaintiffs' time.

50. Moreover, each time Defendant placed a robocall to Plaintiffs' cellular phones, Defendant occupied Plaintiffs' cellular phones such that Plaintiffs were unable to receive other phone calls or otherwise utilize their cellular phones while their phones were ringing.

51. Plaintiffs both use their cellular phones for work purposes and Defendant's incessant robocalls have adversely affected Plaintiffs' work productivity. For example, Plaintiffs would routinely miss work calls believing that the calls were from Defendant.

52. Due to Defendant's refusal to honor Plaintiffs' requests that the robocalls cease, Plaintiffs were forced to retain counsel to compel Defendant to cease its invasive calls.

## **CLASS ALLEGATIONS**

53. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

54. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) individually, and on behalf of all others similarly situated ("Putative Class") defined as follows:

> All individuals residing in the United States: (a) to whom Defendant or a third party acting on Defendant's behalf, placed a phone call to his/her cellular phone number; (b) utilizing an artificial or prerecorded voice; (c) in connection with a debt allegedly owed by a third party; (d) at any time in the period that begins four years before the date of the filing of the original complaint through the date of class certification.

55. The following individuals are excluded from the Putative Class: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers, and directors; (3) Plaintiffs' attorneys; (4) individuals who properly execute and file a timely request for exclusion from the Putative Class; (5) the legal representatives, successors, or assigns of any such

7

excluded individuals; and (6) individuals whose claims against Defendant have been fully and finally adjudicated and/or released.

**A.      Numerosity**

56.     The exact number of members of the Putative Class are unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable.

57.     Upon information and belief, Defendant placed unlawful robocalls to thousands of consumers who fall into the definition of the Putative Class.

58.     Members of the Putative Class can be objectively identified from the records of Defendant and any affiliated vendors/agents to be gained through targeted discovery.

**B.      Commonality and Predominance**

59.     There are many questions of law and fact common to the claims of Plaintiffs and the Putative Class, and those questions predominate over any questions that may affect individual members of the Putative Class.

**C.      Typicality**

60.     Plaintiffs' claims are typical of members of the Putative Class because Plaintiffs and members of the Putative Class are entitled to damages as a result of Defendant's conduct.

**D.      Superiority and Manageability**

61.     This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

62.     The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution.

63.     By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

8

Case 5:22-cv-00012-KDB-DSC   Document 1   Filed 02/03/22   Page 8 of 11

64. Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

**E. Adequate Representation**

65. Plaintiffs will adequately and fairly represent and protect the interests of the Putative Class.

66. Plaintiffs have no interests antagonistic to those of the Putative Class and Defendant has no defenses unique to Plaintiffs.

67. Plaintiffs have retained competent and experienced counsel in consumer class action litigation.

## COUNT I
### Violations of the Telephone Consumer Protection Act (47 U.S.C. § 227 *et. seq.*)
### (On behalf of Plaintiffs and members of the Putative Class)

68. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

69. Defendant violated § 227 (b)(1)(A)(iii) of the TCPA by placing no less than six-hundred (600) non-emergency calls to Adrianne's cellular phone utilizing an artificial or prerecorded voice without Adrianne's consent.

70. Defendant violated § 227 (b)(1)(A)(iii) of the TCPA by placing no less than seven-hundred (700) non-emergency calls to Alejandro's cellular phone utilizing an artificial or prerecorded voice without Alejandro's consent.

71. As pled above, Defendant utilized a prerecorded voice that automatically played upon the call reaching Plaintiffs' voicemail.

72. As pled above, Plaintiffs do not have existing accounts with Defendant and therefore Defendant did not have consent to place robocalls to Plaintiffs' cellular phones.

73. As pled above, Plaintiffs were harmed by Defendant's unlawful robocalls.

74. As pled above, Defendant's phone calls were deliberately placed to non-debtors in an attempt to compel payment on delinquent accounts owed by an acquaintance or relative of the non-debtors.

75. Accordingly, it is clear that Defendant had actual knowledge it did not have consent to place robocalls to Plaintiffs, but did so in utter disregard of the TCPA.

76. Upon information and belief, Defendant does not maintain adequate policies and procedures to ensure compliance with the TCPA.

77. Upon information and belief, Defendant knew its unlawful practice of calling non-debtors was in violation of the TCPA, yet deliberately employed such practice to maximize revenue and profits.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the members of the Putative Class, request the following relief:

A. an order granting certification of the proposed class, including the designation of Plaintiffs as the named representatives, and the appointment of the undersigned as Class Counsel;

B. a judgment in Plaintiffs' favor finding that Defendant violated 47 U.S.C. § 227 (b)(1)(A)(iii);

C. an order enjoining Defendant from placing further unlawful calls to Plaintiffs and the members of the Putative Class;

D. an award of $500.00 in damages to Plaintiffs and the members of the Putative Class for each such violation;

E. an award of treble damages up to $1,500.00 to Plaintiffs and the members of the Putative Class for each such violation; and

F. an award of such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury.

Respectfully submitted, this the 3rd day of February, 2022.

> BY: /s/ Matthew R. Gambale
> MATTHEW R. GAMBALE
> N.C. Bar No. 43359
> OSBORN GAMBALE BECKLEY & BUDD PLLC
> 721 W. Morgan Street
> Raleigh, North Carolina 27603
> matt@counselcarolina.com
> T: 919.373.6422
> F: 919.578.3733
> *Attorneys for Plaintiffs*