UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ALEJANDRO J. SULETA and ADRIANNE CARROLL,<br><br>                Plaintiffs,<br><br>  v.<br><br>CITIBANK, N.A.; and JOHN DOES 1-10,<br><br>                Defendants. | Case No. 5:22-cv-12-KDB-DSC<br><br>**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

NOW COMES Defendant Citibank, N.A., by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, Local Civil Rule 7.1, and the Court's June 16, 2022 Scheduling Order (ECF No. 18), and provides the following in support of its motion for summary judgment:

**NATURE OF THE MATTER BEFORE THE COURT**

Plaintiffs Alejandro J. Suleta ("Plaintiff Suleta") and Adrianne Carroll ("Plaintiff Carroll") (collectively "Plaintiffs") allege that Citibank violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") by calling their respective cellular telephones using an artificial or prerecorded voice without their consent.  *See* (First Amended Complaint ("FAC"), ECF No. 27 ¶¶ 1, 28, 33, 38, 46).  Plaintiffs' claims fail as a matter of law and fact, and summary judgment should be entered in favor of Citibank.

As an initial matter, Plaintiffs have not done any discovery in this case and discovery is closed.  Plaintiffs thus have failed to produce any evidence to support their claims.  Plaintiffs' claims fail because they have not presented any evidence that Citibank contacted them using an artificial or prerecorded voice without their consent.

Plaintiffs' claims also fail because the evidence Citibank presented and produced[1] wholly disprove Plaintiffs' claims. While Plaintiffs claim they are not Citibank cardholders, they actively participated in the opening and use of a Best Buy branded Citibank credit card account that was opened in the name of Plaintiff Suleta's father, who is also named Alejandro Suleta ("Suleta Sr.").[2] In doing so, Plaintiffs repeatedly consented to receive calls using artificial or prerecorded voice messages, and never revoked that consent. Consent is a complete defense under the TCPA and Plaintiffs' claims fail as a result.

For the foregoing reasons, Citibank respectfully requests that summary judgment be entered in its favor and against Plaintiffs.

## STATEMENT OF FACTS

Plaintiffs ground their TCPA claims in alleged calls to two phone numbers: (1) telephone number (828) 320-4921 (the "4921 Number") that Plaintiff Suleta alleges belongs to him; and (2) telephone number (828) 493-5627 (the "5627 Number") that Plaintiff Carroll alleges belongs to her. (FAC ¶¶ 15–16).

1. **The 4921 Number.**

On or about December 24, 2018, Citibank received an application (the "Application") to open a Best Buy branded Citibank credit card account in the name of Suleta Sr., residing in Lenoir, North Carolina, born in 1958, and with a Social Security Number ending in 4938. (Declaration of Kelly Rainwater ("Rainwater Decl.") ¶¶ 6–7, Ex. A). The application included the 4921 Number

---

[1]  While Plaintiffs have not engaged in or produced any discovery, Citibank produced documents and information as part of its initial disclosures.

[2]  Plaintiff Suleta pretended to be his father and shared his father's personal identifying information to open the Account so Plaintiff Suleta could use the account to make online purchases. This call was recorded and is part of the record in this case.

and e-mail address alexsultea@yahoo.com, meaning that information was provided to Citibank at the time of application with the representation that it belonged to Suleta Sr. (*Id.*) Citibank relied on the representation that the 4921 Number belonged to Suleta Sr. in approving the Application. (*Id.* ¶¶ 6–7, 11).

On the same day (December 24, 2018), Plaintiff Suleta called Citibank from the 4921 Number to confirm that the Application was received and approved. Plaintiff Suleta pretended to be his father, Suleta Sr.,[3] and provided his father's Social Security Number and date of birth as his own. (Rainwater Decl. ¶¶ 8–9, Ex. B-1 (Dec. 24, 2018 Call Recording); Ex. B-2 (Transcript of Dec. 24, 2018 Call Recording)). During the December 24, 2018 call, Plaintiff Suleta advised that he planned to immediately use the Account online, before the physical credit card was mailed. (*Id.* Exs. B-1 and B-2). To effectuate that desire, Plaintiff Suleta again provided Citibank the 4921 Number. (*Id.*).

On September 9, 2021, Citibank called the 4921 Number and Plaintiff Suleta answered the call. (Rainwater Decl. Ex. F-1 (Sept. 9, 2021 Call Recording)); Ex. F-2 (Transcript of Sept. 9, 2021 Call Recording)). Plaintiff Suleta acknowledged on that call that the Account belongs to him, discussed making a future payment, and represented that his fiancée, Plaintiff Carroll, regularly makes payments on the Account. (*Id.* ¶ 21, Exs. F-1 and F-2). Plaintiff Suleta then reaffirmed his consent by explicitly agreeing that Citibank had consent to contact him at the 4921 Number (including requesting that Citibank contact him at a specific time) and to contact Plaintiff

---

[3] Suleta Sr. has two other accounts with Citibank: (i) a Citibank MasterCard credit card account, ending in 6230; and (ii) a Tractor Supply credit card account, ending in 0985. (Rainwater Decl. ¶ 13). Conversations between Citibank and Suleta Sr. on those accounts were recorded. Suleta Sr. spoke exclusively in Spanish and has a different voice than Plaintiff Suleta. (*Id.* ¶ 14, Ex. C). The recorded calls with Plaintiff Suleta and Suleta Sr. are clearly different people. *Compare* (Rainwater Decl., Ex. B-1) *with* (Rainwater Decl., Ex. C).

Carroll at the 5627 Number.[4] (*Id.*).

| Citibank Representative | OK. And, uh, before I let you go, the home phone that ends in 4921 is your active cell phone number, right? |
|---|---|
| Plaintiff Suleta | That is correct, yes but uh… |
| Citibank Representative | And, uh… |
| Plaintiff Suleta | If you guys can contact me later in the afternoon cause I mean I'm at work right now but typically I don't, I'm not really available during the day. |
| Citibank Representative | Yes, Alejandro, let me finish first. And the cell phone number that ends in 5627 is not valid anymore. |
| Plaintiff Suleta | 493-5627? |
| Citibank Representative | The one that ends in 5627. Not valid anymore? |
| Plaintiff Suleta | No, yeah, yeah, no, you said it's 828-493-5627? |
| Citibank Representative | Is still active or not? |
| Plaintiff Suleta | Is, is, is that the phone number? If it is, then yeah, it's still active. That's my fiancée's number. |
| Citibank Representative | So, uh, just a moment. The one that ends in 5627 is still active, right? |
| Plaintiff Suleta | Yes, it is. |
| Citibank Representative | OK. Just a moment because it shows here not valid anymore. Just a moment. I need to confirm this one by providing a mobile number or a number related to a mobile number, you agree that our service provider can use an auto-dialer to contact you at that number by text message if they get your voice, pre-recorded or live agent call charges may apply, |

---

[4] Any argument that it was not Plaintiff Suleta on the calls pretending to be Suleta Sr. is belied by the fact that he provided both phone numbers and specifically discussed his fiancée, Plaintiff Carroll, and her phone number. *See* (*Id.* ¶ 21, Exs. F-1 and F-2); *see also* FAC ¶¶ 16, 18, 20–21 (alleging the numbers belong to Plaintiffs and that Plaintiff Carroll is Plaintiff Suleta's fiancée).

| | OK? |
|---|---|
| Plaintiff Suleta | OK. |
| Citibank Representative | OK. And uh, e-mail address you have here is still at yahoo.com. Are you still using that? |
| Plaintiff Suleta | Yes. |
| Citibank Representative | OK. And, uh, by the way, Alejandro, I need your consent also with the authorization number that ends in 4921. By providing your e-mail, by providing a mobile number or a number related to a mobile number, you agree that we are service providers. Can we send out a dialer to contact you at that number by text message or if we get your voice, pre-recorded, live agent calls and one time charges may apply, OK? |
| Plaintiff Suleta | OK. |

(*Id.* ¶ 21, Exs. F-1 and F-2).

As discussed in detail below, Plaintiff Suleta consented to calls from Citibank as a matter of law by providing the 4921 Number multiple times to Citibank. *See, e.g.*, *Self v. Nationstar Mortg. LLC*, 2019 U.S. Dist. LEXIS 165305, at *18 (E.D.N.C. Sept. 26, 2019) ("[T]he FCC and most courts read the TCPA to provide that 'a telephone consumer who provides her number to another party consents to receive calls or texts from that party.'") (quoting *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1098 (N.D. Cal. 2015) (collecting cases)).

2. **The 5627 Number.**

The 5627 Number was added to the Account via Citibank's online portal on January 25, 2019. (Rainwater Decl. ¶ 15, Ex. D). The 5627 Number was added to the Account using e-mail address holdingmyownhand@yahoo.com, (*id.*), which belongs to Plaintiff Carroll. To add the 5627 Number online, Plaintiff Carroll was required to log into the Account, which required knowledge and entry of unique and personal information only available to the accountholder. (*Id.*)

On September 8, 2021, Citibank called the 5627 Number and asked to speak with Suleta

Sr. (Rainwater Decl. ¶¶ 17–18, Ex. E-1 (Sept. 8, 2021 Call Recording)); Ex. E-2 (Transcript of Sept. 8, 2021 Call Recording)). Plaintiff Carroll answered the call, and responded that the 5627 Number did not belong to Alejandro Suleta. (*Id.* Exs. E-1 and E-2.) Although Plaintiff Carroll did not ask for calls to stop, Citibank immediately flagged the 5627 Number as a "wrong number" and stopped placing calls to the 5627 Number. (*Id.* ¶¶ 18–19.)

The next day, on September 9, 2021, Citibank called the 4921 Number (the call transcribed above), and Plaintiff Suleta answered and advised that the 5627 Number was not a wrong number and explicitly agreed that Citibank had consent to call the 5627 Number:

| Citibank Representative | Yes, Alejandro, let me finish first. And the cell phone number that ends in 5627 is not valid anymore. |
|---|---|
| Plaintiff Suleta | 493-5627? |
| Citibank Representative | The one that ends in 5627. Not valid anymore? |
| Plaintiff Suleta | No, yeah, yeah, no, you said it's 828-493-5627? |
| Citibank Representative | Is still active or not? |
| Plaintiff Suleta | Is, is, is that the phone number? If it is, then yeah, it's still active. That's my fiancée's number. |
| Citibank Representative | So, uh, just a moment. The one that ends in 5627 is still active, right? |
| Plaintiff Suleta | Yes, it is. |
| Citibank Representative | OK. Just a moment because it shows here not valid anymore. Just a moment. I need to confirm this one by providing a mobile number or a number related to a mobile number, you agree that our service provider can use an auto-dialer to contact you at that number by text message if they get your voice, pre-recorded or live agent call charges may apply, OK? |
| Plaintiff Suleta | OK. |

(*Id.* ¶¶ 20–21, Exs. F-1 and F-2).

As discussed in detail below, Plaintiff Carroll consented to calls from Citibank as a matter of law by providing the 5627 Number to Citibank. *See, e.g.*, *Self*, 2019 U.S. Dist. LEXIS 165305, at *18 ("[T]he FCC and most courts read the TCPA to provide that 'a telephone consumer who provides her number to another party consents to receive calls or texts from that party.'") (quoting *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1098 (N.D. Cal. 2015) (collecting cases)). Plaintiff Suleta also consented on behalf of Carroll by explicitly providing consent on the recorded call. *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110 (11th Cir. 2014) (holding individual bound by consent provided through close personal relationship); *id.* (reasoning husband's TCPA claim barred by fact that wife gave consent to call husband's phone number); *In re GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition*, 29 F.C.C.R. 3442, 3447 (2014) ("[T]he TCPA does not prohibit a caller from obtaining consent through an intermediary.")

### 3. The Account.

The record evidence is clear that Plaintiffs were involved in the Application for the Account and actively used the Account. Citibank only placed calls to the 4921 and 5627 Numbers at issue because Plaintiffs repeatedly confirmed that Citibank had consent to do so. (Rainwater Decl. ¶¶ 7–8, 10, 15, 20–23, Exs. A, B-1, B-2, D, E-1, E-2, F-1, F-2). While Plaintiffs claim that they did not provide consent and demanded that calls cease on multiple occasions, (FAC, ¶¶ 30–31, 40–41, 43–44), Citibank's records prove that they repeatedly consented to receive calls and never asked for calls to stop. (Rainwater Decl. ¶¶ 22–25). Moreover, Plaintiffs explicitly reaffirmed their consent during the time they were allegedly receiving calls from Citibank. *Compare* (FAC ¶¶ 30–33, 40–41, 43–44) (claiming Plaintiffs received calls without their consent between January 2021 and February 2022) *with* (Rainwater Decl., Exs. F-1 and F-2) (establishing Plaintiffs reaffirmed

consent *after* they allege they demanded calls stop).

## QUESTION PRESENTED

Whether Citibank is entitled judgment as a matter of law that it did not violate the TCPA, 47 U.S.C. § 227. Proposed answer: Yes.

## ARGUMENT

### I. Standard of Review.

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citation and internal quotation marks omitted). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

The trial court is responsible for determining whether a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Material facts are those facts necessary to establish the elements of a party's cause of action. A dispute is only 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Universal Furniture Intern., Inc. v. Frankel*, 835 F. Supp. 2d 35, 39 (W.D.N.C. 2011) (quoting *Anderson*, 477 U.S. at 248). Accordingly, while the trial court must view the facts in the light most favorable to the nonmovant, the existence of some factual disputes standing alone is "insufficient to prevent summary judgment." *Id.* "[I]t is the duty of the court to withdraw the case from the jury when the

necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Sylvia Development Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995).

While, the "moving party 'bears the initial responsibility of informing the district court of the basis for its motion' and 'demonstrating the absence of a genuine issue of material fact,'" once that burden has been met, "the burden shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" *Young v. Prince George's County*, 355 F.3d 751, 754 (4th Cir. 2004) (*quoting Celotex*, 477 U.S. at 323 (1986)). In opposing summary judgment, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Sandlands C&D LLC v. Horry County*, 737 F.3d 45, 54 (4th Cir. 2013); *see also Matsushita Elec. Indus. Co.*, 475 U.S. at 587–88 (explaining that to defeat a summary judgment motion, the nonmovant must show that inferences in its favor are reasonable "in light of . . . competing inferences. . . ."); *DiPaulo v. Potter*, 733 F. Supp. 2d 666 (M.D.N.C. 2010) ("Even where intent and motive are crucial to determining the outcome of the cause of action, unsubstantiated speculation and bald assertions will not withstand summary judgment.") (Schroeder, J.).

**II.  Citibank is Entitled to Summary Judgment.**

The TCPA prohibits making calls to a cell phone "using . . . an artificial or prerecorded voice" without the called party's "prior express consent." 47 U.S.C. § 227(b)(1)(A)(iii); *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 680 (D. Md. 2017). An artificial or prerecorded voice message must actually play during the communication to be actionable under the TCPA. *See, e.g.*, *Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 641 (5th Cir. 2015) ("To be liable under the 'artificial or prerecorded' voice section of the TCPA . . . a defendant must make a call and an artificial or prerecorded voice must actually play."). Failed attempts to leave prerecorded messages (e.g., blocked calls or messages not left because a voice mailbox is full) are not

actionable. *See id.* at 640–41; *Roberts v. Medco Health Solutions, Inc.*, No. 4:15-cv-1368, 2016 U.S. Dist. LEXIS 97177, at *5 (E.D. Mo. Jul. 26, 2016) (reasoning calls to plaintiff who used a call-blocking app that prevented phone from ringing or going to voicemail were not actionable because a "call in which a prerecorded voice might, but does not play, does not trigger violation of the TCPA").

Moreover, prior express consent is a complete defense to a claim under the TCPA. *Snow v. Glob. Credit & Collection Corp.*, 2014 U.S. Dist. LEXIS 157023, at *10–11 (E.D.N.C. Nov. 6, 2014). Thus, even if an artificial or prerecorded voice message is left and actually played, it is not actionable under the TCPA if the sender had consent to leave that message. *Derossett v. Patrowicz*, No. DKC 21-1294, 2022 U.S. Dist. LEXIS 173564, at *12 (D. Md. Sept. 23, 2022) (dismissing plaintiff's TCPA claim because defendant had prior express consent to leave messages via an artificial or prerecorded voice). Prior express consent is created by a person voluntarily providing his or her phone number to the caller. *See, e.g.*, *id.* at *11 (noting that prerecorded calls are lawful as long as the called party has provided prior express consent, such as where the plaintiff "gave [defendant] her phone number and authorized him to call her"); *Self*, 2019 U.S. Dist. LEXIS 165305, at *18 ("[T]he FCC and most courts read the TCPA to provide that 'a telephone consumer who provides her number to another party consents to receive calls or texts from that party.'") (quoting *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1098 (N.D. Cal. 2015) (collecting cases)). Prior express consent can also be created directly by the recipient of the communications or by an intermediary such as another individual who has that consent. *Mais*, 768 F.3d at 1110 (holding individual bound by consent provided through close personal relationship); *id.* (reasoning husband's TCPA claim barred by fact that wife gave consent to call husband's phone number s); *In re GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition*, 29 F.C.C.R. at 3447 ("[T]he TCPA does

not prohibit a caller from obtaining consent through an intermediary.").

For purposes of this Motion only, Citibank does not dispute that the 4921 Number was Plaintiff Suleta's cell phone or that it placed calls to that number. Similarly, for purposes of this Motion only, Citibank does not dispute that the 5627 Number was Plaintiff Carroll's cell phone or that it placed calls to that number. Those calls, however, did not violate the TCPA. The record evidence demonstrates that Citibank had consent to call the 4921 and 5627 Numbers. Plaintiffs cannot meet their respective burdens of proving that they revoked that consent or that they received any artificial or prerecorded voice calls without such consent.

### a. Plaintiffs Consented to Receive Calls.

Plaintiffs' claim fails because Citibank had consent to call the 4921 and 5627 Numbers, and Plaintiffs cannot meet their respective burdens of proving revocation. Prior express consent is a complete defense to TCPA claims. *Pepicelli v. FedEx Corporate Servs.*, 458 F. Supp. 3d 343, 351 (D. Md. 2020); *Snow*, 2014 U.S. Dist. LEXIS 157023, at *10–11. Prior express consent exists, *inter alia*, when the individual voluntarily provides their phone number to the business placing the calls or someone with a close relationship provides the phone number to the business placing the calls. *See Ginwright* 280 F. Supp. 3d at 682 (holding plaintiff gave prior express consent to call his cell phone when plaintiff listed his phone number in a credit card application); *Cartrette v. Time Warner Cable, Inc.*, 157 F. Supp. 3d 448, 453 (E.D.N.C. 2016) (reasoning a debtor's "[p]rovision of a cellphone number [to a creditor] demonstrates express consent by the [debtor] to be contacted at that number"); *see also Daubert v. NRA Grp., LLC*, 861 F.3d 382, 389–90 (3d Cir. 2017) (citing *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 (1992) for the proposition that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary"). *Mais*, 768 F.3d at 1110 (individual bound

by consent provided through close personal relationship); *id.* (husband's TCPA claim barred by fact that wife gave consent to call husband's phone numbers); *In re GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition*, 29 F.C.C.R. at 3447 ("[T]he TCPA does not prohibit a caller from obtaining consent through an intermediary.").

Plaintiff Suleta gave Citibank consent to contact him at the 4921 Number regarding the Account at least four discrete times: (1) when included the 4921 Number on the Application for the Account; (2) during the December 24, 2018 recorded call when he pretended to be his father; (3) during the December 24, 2018 recorded call when he requested a text to the 4921 Number; and (4) during the September 9, 2021 recorded call when he reaffirmed that Citibank had consent to contact him after being read a consent disclosure. (Rainwater Decl. ¶¶ 6–10, 21–22, Exs. A, B-1, B-2, F-1, and F-2); *see also Ginwright* 280 F. Supp. 3d at 682 (voluntary provision of phone number is consent); *Cartrette*, 157 F. Supp. 3d at 453 (same). Any claim that it was not Plaintiff Suleta on the calls or involved with the Application is belied by the recordings: Suleta Sr. has a different voice and speaks only Spanish, while Plaintiff Suleta spoke English on the calls and repeatedly referred to Plaintiff Carroll as his fiancée and repeatedly referred to his and Plaintiff's Carrol's phone numbers. Plaintiffs have not presented any evidence to refute these facts.

Similarly, Plaintiff Carroll gave Citibank consent to contact her regarding the Account on January 25, 2019 when she added the 5627 Number to the secure online profile for Account using her confirmed e-mail address. (Rainwater Decl. ¶ 15, Ex. D), and on the September 9, 2021 recorded call when Plaintiff Suleta reaffirmed that Citibank had consent to call the 5627 Number after being read a consent disclosure. (*Id.* ¶¶ 21–22, Exs. F-1 and F-2); *see also Ginwright* 280 F. Supp. 3d at 682 (voluntary provision of phone number is consent); *Mais*, 768 F.3d at 1110 (concluding individual bound by consent provided through close personal relationship); *In re*

*GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition*, 29 F.C.C.R. at 3447 ("[T]he TCPA does not prohibit a caller from obtaining consent through an intermediary.")

Once consent is proven, as it is here, the burden shifts to Plaintiffs to prove that they revoked that consent. *Ginwright*, 280 F. Supp. 3d. at 684; *see also Van Patten v. Vertical Fitness Grp., Ltd. Liab. Co.*, 847 F.3d 1037, 1048 (9th Cir. 2017) (affirming summary judgment because the plaintiff did not show evidence of revocation of prior established consent); *Hill v. Universal Fid., L.P.*, No. 5:16-cv-02957, 2018 U.S. Dist. LEXIS 84086, at *21 (N.D. Ohio Apr. 26, 2018) (granting summary judgment for defendant after plaintiff provided no evidentiary support of revocation of consent). Revocation occurs only when a person expressly and clearly articulates a desire not to receive any further calls, which must be understandable to the recipient of the message. *See* 30 F.C.C. Rcd. 7961, at ¶ 70; *see also Van Patten*, 847 F.3d at 1048 (noting, to be effective, "[r]evocation of consent must be clearly made and express a desire not to be called or texted").

Plaintiffs cannot meet their respective burdens of proving revocation. While Plaintiffs allege that they revoked consent multiple times, including in January, February, and August 2021, (FAC ¶¶ 30–31; 40–41; 43–44), they have presented no evidence to support those allegations and Citibank's records show that Plaintiffs never asked for calls to stop (including during January, February, or August 2021). (Rainwater Decl. ¶ 24). Fact discovery is closed and Plaintiffs have provided absolutely no evidence of revocation, either in their initial disclosures or otherwise. Regardless, Plaintiff Suleta plainly reaffirmed that Citibank had consent to call both numbers on the September 9, 2021 recorded call, which occurred ***after*** Plaintiffs allege to have revoked consent in January, February, and August 2021. *Compare* (Rainwater Decl., Exs. F-1 and F-2) (reaffirming consent in September 2021); *with* FAC ¶¶ 30–31, 40–41, 43–44) (alleging revocation in January,

February, and August 2021).

Because the record evidence proves that Citibank had consent to call the 4921 and 5627 Numbers and Plaintiffs never revoked that consent (and instead reaffirmed that consent), Plaintiffs' claims fail as a matter of law. *See, e.g.*, C*herkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 814–15 (S.D. Tex. 2014) (finding no TCPA violation because plaintiff consented to receive calls and account notes demonstrated that plaintiff had not spoken to representatives contradicting his "self-serving" assertion that he revoked consent); *Beard v. John Wester Chevrolet, LLC*, No. 5:21-CV-173-D, 2022 U.S. Dist. LEXIS 204379, at *20–21 (E.D.N.C. Nov. 9, 2022) (granting summary judgment for defendant where plaintiff failed to produce any evidence that she revoked consent); *Barnett v. Bank of Am., N.A.*, No. 3:20-cv-272-RJC-DSC, 2021 U.S. Dist. LEXIS 101171, at *13(W.D.N.C. May, 28, 2021) (Conrad, J.) ("[A] Plaintiff's words must clearly revoke consent. Here, Plaintiff requested to be contacted by mail, and stated that he would contact Defendant when he was able to pay, but at no point did he directly ask Defendant to stop contacting him. In fact, when Defendant informed Plaintiff that the calls would continue, Plaintiff did not argue and even said 'Okay.' . . . Any arguable implication is ambiguous and insufficient for revocation. Plaintiff's TCPA claim therefore fails on the independent grounds that Plaintiff legally consented, and did not explicitly withdraw his consent, to receive the phone calls in question."); *Neria v. Dish Network L.L.C.*, No. 6:19-CV-00430-ADA-JCM, 2020 U.S. Dist. LEXIS 108169, at *12–14 (W.D. Tex. Jun. 19, 2020) (granting summary judgment for defendant where plaintiff failed to present evidence he received calls after revoking consent); *Hudson v. Sharp Healthcare*, No. 13-CV-1807-MMA (NLS), 2014 U.S. LEXIS 87184, at *24–27 (S.D. Cal. Jun. 25, 2014) ("Plaintiff did not request not to be called. . . . Thus, no evidence supports Plaintiff's claim that the parties reached a mutual agreement whereby [defendant] would stop calling

Plaintiff."); 30 F.C.C. Rcd. at 7996 n.233 (noting the effectiveness of revocation requires consideration of all facts and circumstances).

Since Citibank had consent to place the calls at issue and Plaintiffs have not met their respective burdens of proving revocation, summary judgment should be entered in favor of Citibank.

### b. Plaintiffs Cannot Meet Their Burden of Proving an Artificial or Prerecorded Voice was Used.

Plaintiffs' claims also fail because they cannot meet their respective burdens of proving a prerecorded message was left and actually played. In order to demonstrate liability under the TCPA, Plaintiffs bear the burden of proving that each call to the 4921 and 5627 Numbers resulted in a prerecorded message that was played during the communication. *See Ybarra*, 807 F.3d at 641 (5th Cir. 2015) ("[M]aking a call in which a prerecorded voice might, but does not, play is not a violation of the TCPA. Instead, the prerecorded voice must 'speak' during the call. . . . With a prerecorded voice . . . unless the recipient answers, an artificial or prerecorded voice is never used."); *Roberts v. Medco Health Solutions, Inc.*, No. 4:15 CV 1368 CDP, 2016 U.S. Dist. LEXIS 97177, at *5 (E.D. Mo. Jul. 26, 2016) (citing *Ybarra*, 807 F.3d at 641).

Thus, to avoid summary judgment, Plaintiffs must: (1) point to concrete evidence in the record that demonstrates prerecorded messages were left without their consent; and (2) identify each and every call on which a prerecorded message actually played. *See Ybarra*, 807 F.3d at 641. Although Plaintiffs offer the conclusory assertion that Citibank left "prerecorded messages," they have not presented any proof that any calls they received were in fact artificial or prerecorded voice messages nor have they identified any specific calls that resulted in prerecorded messages being left.

Plaintiffs have presented no expert and have conducted no discovery on this issue. Nor

have Plaintiffs produced any recordings of messages from Citibank they believe might be prerecorded. Moreover, Plaintiffs have undertaken no discovery to establish that: (1) messages were prerecorded and not sent by a live agent; or (2) that any of the calls they received actually resulted in a prerecorded message playing. Simply stated, Plaintiffs have ***no evidence*** to substantiate their claim that they received prerecorded messages, as opposed to messages from live agents reading from a script. Plaintiffs' speculation that the length of the messages and tone of voice used by the speaker suggest they are prerecorded is woefully insufficient at this stage, and is belied by Plaintiffs' allegations that they spoke with live agents when they answered the calls. *See* FAC ¶¶ 28, 30 (alleging that a voicemail was left when Plaintiff Carroll did not answer a call, but a live agent was on the line when she did answer a call); ¶¶ 38, 40 (alleging that a voicemail was left when Plaintiff Suleta did not answer a call, but a live agent was on the line when he did answer a call).

Because Plaintiffs have ***no evidence*** that they received any calls that resulted in a prerecorded message playing, their claims fail as a matter of law. *See, e.g.*, *Metzler v. Pure Energy USA LLC*, No. 21-CV-9798 (VEC), 2023 U.S. Dist. LEXIS 19600, at *14 (S.D.N.Y. Feb. 6, 2023) (dismissing complaint because Plaintiffs did not establish that a prerecorded message was left "rather than, say, the product of a live person reading from a script"); *Chyba v. Bayview Loan Servicing, LLC*, No. 3:14-cv-01415-BEN-BLM, 2016 U.S. Dist. LEXIS 133849, at *8–9 (S.D. Cal. Sept. 27, 2016) (granting defense summary judgment where plaintiff failed to present any evidence demonstrating prerecorded messages were left); *Nieto v. Allied Interstate, Inc.*, No. CCB-13-3495, 2014 U.S. Dist. LEXIS 140706, at *7 n.2 (D. Md. Oct. 4, 2014) (finding no genuine dispute of fact as to whether defendant used a prerecorded message despite plaintiff's testimony to the contrary); *Dennis v. Reg. Adjustment Bureau, Inc*., No. 09-61494, 2010 U.S. Dist. LEXIS

144776, at *10 (S.D. Fla. July 7, 2010) (holding that plaintiff's belief that voice messages sounded prerecorded was an unsubstantiated assertion that could not defeat summary judgment).

Plaintiffs have the burden of proving that the calls they received utilized an artificial or prerecorded voice. Since Plaintiffs have presented no evidence showing any of this (and because discovery has now closed),[5] they cannot advance their TCPA claim and Citibank is entitled to summary judgment.

### c. Plaintiffs Cannot Demonstrate a Willful Violation of the TCPA.

While summary judgment should be entered in favor of Citibank on all of Plaintiffs' claims, Citibank's entitlement to judgment on willfulness is clear. To pursue a claim for a willful or knowing violation of the TCPA, a plaintiff must prove that "the person ha[s] reason to know, or should have known, that his conduct would violate the statute." *Maryland v. Univ. Elections, Inc.*, 862 F. Supp. 2d 457, 463 (D. Md. 2012) (quoting *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Texas 2001)); *see also Krakauer v. Dish Network L.L.C.*, No. 1:14-CV-333, 2017 U.S. Dist. LEXIS 77163, at *34 (M.D.N.C. May 22, 2017) (citing 47 U.S.C. § 227(c)(5)) (even if willfulness proven, treble damages are discretionary). Plaintiffs repeatedly provided their consent to be contacted by Citibank with respect to the Account. Plaintiffs did no discovery in this case, and thus have no evidence to prove that Citibank violated the TCPA. Plaintiffs likewise have no evidence that Citibank had reason to know or believe its conduct violated the statute (again – having done no discovery, they cannot possibly meet this burden). Accordingly, Citibank is entitled to summary judgment as to Plaintiffs' claim for a willful violation of the TCPA.

---

[5] Plaintiffs cannot overcome their lack of evidence on this point with their own self-serving testimony. *See, e.g.*, *National Enters. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000) ("[The non-moving party's] self-serving affidavit . . . is not enough to defeat [the moving party's] motion for summary judgment."); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) ("[S]ummary judgment affidavits cannot be conclusory.").

## CONCLUSION

For the foregoing reasons, Citibank respectfully requests that the Court enter summary judgment in its favor on Plaintiffs' claims.

DATED: March 1, 2023

*/s/ Daniel JT McKenna*
Daniel JT McKenna
Michael J.M. Fausey
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
T: (215) 665-8500
F: (215) 864-8999
mckennad@ballardspahr.com
fauseym@ballardspahr.com

Donald R. Pocock
Nelson Mullins Riley & Scarborough LLP
The Knollwood
380 Knollwood Street, Suite 530
Winston-Salem, NC 27103
T: (336) 774-3324
Donald.Pocock@nelsonmullins.com

*Counsel for Defendant, Citibank, N.A.*